Felix **MERCED, Ani Sandoval, Juan Rosado, and Manuel Delacruz, Plaintiffs,**

v.

**Edward I. KOCH, as Mayor of the City of New York, City of New York, Roger P. Alvarez as Commissioner of Community Development Agency, and Community Development Agency, Defendants.**

**No. 83 Civ. 7317 (WCC).**

United States District Court, S.D. New York.

Oct. 31, 1983.

See also, D.C., 574 F.Supp. 498.

---

Puerto Rican Legal Defense and Education Fund, Inc., New York City, for plaintiffs; Jack John Olivero, Rosaria R. Esperon, Juan Cartagena, New York City, of counsel.

Frederick A.O. Schwarz, Corp. Counsel for the City of N.Y., New York City, for defendants; Susan R. Rosenberg, James F.X. Hiler, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

On November 30, 1983, defendant New York City Community Development Agency ("CDA") plans to conduct elections for representatives to thirty-three Area Policy Boards ("APBs"). Plaintiffs, four registered voters of Hispanic national origin, commenced the instant action challenging a change in the manner in which persons will be elected to the APBs beginning with that election.

The CDA is the New York City agency charged with administering federal anti-poverty funds received by New York under the Community Services Block Grant Program. The procedures governing the CDA's administration of these funds are set forth in the "Final Plan for the Restructuring and Reorganization of New York City's Community Action Program" (the "Final Plan"), which was approved by the Federal Community Services Administration on March 9, 1979. The Final Plan creates thirty-three Neighborhood Development ment Areas ("NDAs"), which comprise separate geographic sections of New York City where poverty has been determined to be especially severe. For each NDA there is provided an APB, which plays a crucial role in determining how anti-poverty funds will be distributed within the NDA.

Under the Final Plan, each APB is comprised of 33 members: 17 elected by NDA residents, 11 appointed from the public sector, and five designated from the private sector. Under a "Plan for the Conduct of Neighborhood Development Area Elections 1983" (the "1983 Plan") adopted by the CDA in July of this year, the composition of each APB will be reduced from 33 to 21 members—12 elected by residents of the NDA, seven appointed from the public sector, and two private sector designees. In addition, the 1983 Plan provides that of the 12 elected members, 10 will be direct representatives of three sub-units of the NDA while the other two will be elected on an at-large basis. Under the Final Plan, the NDA was divided into six, as opposed to three, sub-units, and all elected APB positions were allocated directly to the sub-units, with no provision for at-large representation.

Plaintiffs, all residents of NDA # 3, challenge the validity of the changes effected by the 1983 Plan under Sections Two and Five of the Voting Rights Act of 1965 (the "Act"), 42 U.S.C. §§ 1973 and 1973c. Plaintiffs claim that the election of APB representatives is an election covered by the Act, and consequently that defendants have violated § 5 of the Act by failing to submit the changes in the electoral scheme to the United States Attorney General for preclearance purposes. Moreover, plaintiffs allege that the changes in the makeup and manner of election of APB representatives will have an adverse impact upon Black and Hispanic residents in violation of § 2 of the Act.

While defendants contend that this election is not covered by the Act, they did, nevertheless, submit the proposed changes to the Attorney General for approval immediately following the initiation of the instant action. Submission of the 1983 Plan to the Attorney General for preclearance

does not, however, moot the instant controversy, for it is unlikely, absent expedited consideration of defendants' submission, that the Attorney General will make a determination, either upon the question of the coverage of this election or on the issue of the validity of the changes, before the scheduled November 30 election date.

The case is currently before the Court on plaintiffs' motion to convene a three-judge court to hear the § 5 claim. Defendants have cross-moved for judgment on the pleadings or, in the alternative, for summary judgment dismissing the complaint. *See* Rules 12(c) and 56, F.R.Civ.P. Because § 5 of the Act requires that this matter be heard by a court of three judges, I am without power to consider defendants' motion at this time.

> Section 5 of the Act provides in part: Any action under this section shall be heard and determined by a court of three judges in accordance with the provisions of section 2284 of title 28 and any appeal shall lie to the Supreme Court.

Defendants contend that because APB elections are not elections within the coverage of the Act, a single judge can decide the threshold question of subject matter jurisdiction. In *Allen v. Board of Elections,* 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969), however, the Supreme Court unequivocally ruled that questions involving the coverage of § 5 of the Act must be determined by a court of three judges.

> [I]n light of the extraordinary nature of the Act in general, and the unique approval requirements of § 5, Congress intended that disputes involving the coverage of § 5 be determined by a court of three judges.

*Id.* at 563, 89 S.Ct. at 830.

Defendants' attempts to portray the determination in the instant case as other than a coverage question are unavailing. *Beatty v. Dinkins,* 478 F.Supp. 749 (S.D.N.Y. 1979), the case defendants cite in support of the power of a single judge to resolve the instant question, holds only that where the plaintiff fails adequately to allege all the necessary elements of a claim under the Act, a single judge can dismiss the complaint under Rule 12(b)(1), F.R.Civ.P., for failure to state a claim. *See id.* at 751–52 (allegation of discrimination a necessary element of claim under the Act; dismissal for failure to allege necessary element of cause of action is not dismissal on merits). *Accord Backus v. Spears,* 677 F.2d 397, 400 (4th Cir.1982) (although single judge has limited power to determine whether claim is frivolous, whether plaintiff has standing, or whether complaint presents a justiciable controversy, single judge has no power to rule on merits of claim alleging failure to preclear).

In *Allen, supra,* the Court recognized that in a declaratory judgment action brought by a private litigant under § 5, "[t]he only issue is whether a particular state enactment is subject to the provisions of the Voting Rights Act, and therefore must be submitted for approval before enforcement." 393 U.S. at 559, 89 S.Ct. at 828. Thus, a decision on the coverage question is, in essence, a decision on the merits of the claim. Plaintiffs in the instant case have adequately alleged all elements of a § 5 claim, including an allegation that APB elections are covered by § 5 of the Act. While I express no view on the ultimate decision whether APB elections are in fact covered by the Act, I cannot say that plaintiffs' contention is so frivolous that the complaint should be summarily dismissed. Thus § 5 requires that the matter be referred to a three-judge court for a decision on the merits of that claim.

Accordingly, I will ask that the Chief Judge of the United States Court of Appeals for the Second Circuit convene a court of three judges pursuant to 28 U.S.C. § 2284 as soon as practicable to determine whether defendants are required to obtain preclearance from the Attorney General under § 5 of the Act before they can implement the changes in the electoral scheme for APB composition and membership included in the 1983 Plan.

SO ORDERED.